Case number 20-57-22, United States of America v. Michael Clark. Oral argument not to exceed 15 minutes per side. Mr. Napolitano, you may proceed for the appellant. Good morning, your honors. Good morning, counsel. I have requested four minutes reserved for rebuttal. This way. Thank you. Your honors, we've briefed a number of issues for you. I'd like to speak with you this morning about the first of those issues, which is a two-part argument concerning sufficiency of evidence. But really it strikes to issues broader than that, in that one of the elements that we believe the evidence was lacking to prove is in part the most critical of the elements, because it brings into question why are we here and ought we be here and not in a different jurisdictional forum. The question of jurisdiction in cases like this is often not a question. And the law has developed, I think, over the past 30 or so years, trying to keep step with the technology as it has developed over the past 30 years and how we colloquially understood the Internet as a broad concept, perhaps early on, ought to change as we know more about it. And I tend to think that the law is often written on factual fringes, and this presents just such a case. What we have here, Your Honors, is a distribution case in which there is no dispute as to where every bit of data originated and every bit of data ended and how it got there. And we know that through government witnesses. We know that through government witnesses who were state witnesses. There wasn't a single federal witness called in the case. And while that isn't dispositive by any means, I do think it's illustrative. This began as a state criminal investigation. It grew from that state investigation. There were two Kentucky officers at play. The expert who was called to testify about issues in the case was indeed a Kentucky Attorney General's employee who spoke at length about his forensic examination but spoke not at all about the facts of the case. Your point is that there's no interstate activity here, that this was all a Kentucky Inso, a federal Washington plot? Is that basically what you're getting at? It is, and there's no evidence to support the further question of whether there was an instrumentality of interstate commerce use. But, Counsel, why isn't the Internet itself an instrumentality of interstate commerce? So if I got on the interstate here in Cincinnati, I could drive to Kentucky. And then I would have crossed borders. I would have engaged in interstate commerce. But I could also drive somewhere else. I could drive to Cleveland on the interstate highway. Would I not have used a channel or instrumentality of interstate commerce? Well, I think in that particular case, the question is rightly asked whether the instrumentality, as it is commonly understood, satisfies the jurisdictional clause necessary. You have in the example that you cited purely intrastate activity. And the question of whether an interstate highway, for example, used for purely intrastate purposes seems to be an open question. I cite in my reply brief a case that's not a criminal case, but it's a case in which a federal statute is seeking to be imposed regarding some labor standards in which something akin to what Your Honor posited was at issue. And the court in that case determined that just simply using an interstate for intrastate activity does not invoke federal jurisdiction. There is no question that the internet has been recognized by courts as being an instrumentality of interstate commerce. However, I think when the facts of a particular case like this cut the other way unquestionably and without any seeming argument, we have to look at that. We have to ask whether the purpose for which... How are you distinguishing the other cases, to cut against your point? Because what we know here tells us that that intrastate activity is all that occurred. What we know here from all the facts that are in the record, and that's why this is, in essence, a sufficiency claim. What pile of facts was put before the jury upon which they could conclude... that what was purchased to download and share, allegedly share, child pornography was an instrument of interstate commerce? It could have been. And that's, again, where I think this case gets tripped up. We've all read cases in which the expert comes in and testifies, usually it's a question or two, about the manufacturer of that computer. And it's either manufactured internationally or it's manufactured... Even after this computer was manufactured in the United States. There is absolutely no evidence whatsoever about its manufacture, and the burden remains with the government. It's not something we ought to assume, particularly when we're talking about jurisdiction. How about the chip? So are there any chip manufacturers in Kentucky? So presumably it needs a processing system, it needs a chip, all these things. Is there any chip manufacturer in Kentucky? Your Honor, I don't know, but the record is also silent. Again, the burden of proof is on the government. This is an element that ought not be overlooked. This is perhaps the most critical element. It is the why are we here element. It is the why is this case being taken from the common law element. And to the extent that they wish to ask that question of an expert who could say no, there is no such manufacturer in Kentucky, would that have satisfied the statute? Absolutely. And that's, in fact, what happens in the lion's share of cases. Indeed, I think the problem here is brought about by the fact that the Kentucky expert isn't used to answering those questions, probably didn't have that breadth of knowledge, because this jurisdiction element doesn't matter for a state prosecution. It's unique to federal prosecution. What about, like, male lawyer fraud cases? Yes. What is our case law saying there that we require and isn't sort of typically understood use of, even if it's defendant in one state and conduct in one state, that the lawyers or analysts use it, that satisfies the interstate fraud? I'm aware of those cases. I would distinguish them on the fact that the substance of those crimes, the fraud element, is more inexorably intertwined with the commerce clause, right? The originating clause for which jurisdiction is invoked. Right. Wait, wait. I don't understand that. So if instead of sending child pornography across the Internet, if your client had put some child pornography in an envelope, some photographs, and mailed them from Lexington to Covington using the U.S. mail, so they never left Kentucky, but they used the U.S. mail, within the federal jurisdiction or not? Yes, within the federal jurisdiction, I would think, because the U.S. mail is a uniquely federal institution. If they used FedEx? A closer question. And if they had driven it from 75 or around 275, but within Kentucky, a different question. And I think a question that we ought not simply get past by saying, well, the Internet was used. I don't know what the Internet necessarily means. The cases talk about the sort of common understanding of it, this vast network of interconnected computers. But every time our devices hooks up to a Wi-Fi or we plug into an Ethernet port, are we accessing the Internet? We really don't have those fine edges to find. And, again, why this is critical is because this is jurisdictional, obviously. And I don't know that a reflexive approach to the application of this element is an appropriate approach, specifically in a case like this, where it is so well framed out in the facts how this information was transmitted. This is purely a distribution conviction. There was no receipt prosecution. So, you know, any question as to where these images emanated from, had they emanated from some source remote to Kentucky, isn't in the record and isn't before the court. It just feels like in prior cases that we haven't had this granular approach that you're advocating. We've essentially said it, and Judge Larson said it, but as long as you look up the Internet, it's typically enough for a certain set of evidence that would suggest that it involves interstate commerce as an interstate connection. I don't think we've really done this granular look that you want us to do, which is, well, here's what the defendant was, here's what the officer was. Indeed. So it seems to me you're advocating a different approach from what we've done in the past. Is there any out-of-circuit case that best follows the approach you're advocating today? There are out-of-circuit cases that speak to the broad principle, which is… Yeah, actually the broad one. I feel like our cases are sort of rejected here. I don't know if you can see that or if you agree, but it just feels like we've taken a different approach. I don't think that this case has been presented in quite this way. I don't know that I've certainly come across a case in which it has been as clear from the evidence before a jury precisely what occurred and that there can be no question that none of what occurred occurred interstate. Is it fair to say there's no circuit case from another circuit that effectively does run across granular analysis that you want us to do and promises us the federal statute doesn't apply? Judge Ray, had I found it, I certainly would have cited it and made much of it. But I don't know that that necessarily closes the door on that analysis in this case. I see that I'm running out of time, so I appreciate your questions. Thank you. Thank you. We'll have your rebuttal time. May it please the Court, Counsel. Good morning. Respectfully, the United States disagrees with the way the Counsel has framed the first issue in the brief as an issue of the court's jurisdiction security case. Rather, the focus on whether one of the elements of the crime that was charged in this case, the distribution of child pornography in violation of 18 U.S.C. 2252, that is a challenge to the sufficiency of the evidence and whether the government presented proof beyond a reasonable doubt for how much the jury could find that all the elements, including this one, was satisfied, and we did. Our presentation, the evidence that was presented, was consistent not only with, as Judge Rader pointed out, the prior precedent of this court, but it was on par with the pattern jury instruction that this court has issued on this very crime. And that pattern jury instruction and the case law are both consistent, and they both reflect that the Internet is an instrumentality of interstate commerce. The defendant, Counsel, focuses on the fact that the investigator in this case, who conducted the downloads from the defendant's computer, that they both, the originating and the receiving computer, were in Kentucky. But again, that ignores the fact that in order for this distribution to have occurred, several things had to have been in place. First, both computers had to have been on the Internet. Both computers had to have both been operating on the BitTorrent peer-to-peer file sharing network. Both computers had to be using some sort of compatible client software. And then finally, there had to have been a successful download, meaning that the child pornography was available for sharing and was in fact downloaded by the investigator in this case. And so the United States, we presented evidence that established all of those elements, that the child pornography was available for distribution, was successfully downloaded, and was only able to have been done so by the investigator in this case because his computer and the defendant's were both using the Internet. So your point is that available for distribution means that because someone in Indiana could have downloaded it, that's enough. Available for distribution in the peer-to-peer context, like this, means that it is available for sharing, which is the flip side to the coin, the peer-to-peer file sharing coin. This kind of software is used by people to download content. A lot of legal content is downloaded via peer-to-peer file sharing. It has also become the predominant way that illegal content is downloaded due to the decentralized nature of how the content is able to be shared. But this software is used by individuals to download. But the flip side to that coin is that they can only download if they share. If they don't share, it essentially throttles their ability to download content. But my question is maybe not exactly that. The point being made by your adversary here is that because it wasn't actually downloaded outside of the state of Kentucky, there isn't any actual evidence of interstate activity. So my question is, is the mere availability through the sharing files, is that sufficient to show that indeed we have an internet in interstate commerce? I don't think so. I think that goes more to the distribution element as opposed to the interstate nexus element, which I think is what counsel is referring to as a jurisdictional element, whereas the United States is referring to it more as a sufficiency of the evidence argument. This court has held on numerous occasions, including some very similar cases to this one that were litigated recently, that having content available for sharing and for downloading by other peers, which are the other computers on the peer-to-peer file sharing network, that's sufficient for the distribution element under 2252A2, not so much for the interstate commerce element. So to follow up on that, is it your argument then that you don't? Well, it wouldn't be your argument, but do you not have a case that says that the interstate commerce element is satisfied merely by making images available in Kentucky for distribution, presumably worldwide or at least nationwide? You have to meet all of the elements. Absolutely. So how do you meet the interstate commerce one, if not the way that Judge Batchelder just proposed? Well, we meet it because, consistent with this court's prior precedent in United States v. Kenow, which was this very issue was addressed and litigated in that case, and this court held that the use of the Internet, or the Internet is an instrumental facility of interstate commerce. In that case, as opposed to some of the cases that Mike Hoonan has relied on, is on all fours with this case. It was a case involving the distribution of child pornography, and the court frankly didn't spend all that much time on it because it is consistent with the pattern during instruction that has been approved by this court for this particular crime. Why wouldn't we? I mean, I understand it's a default rule that so long as you've connected to the Internet, that satisfies the jurisdictional prong, but why wouldn't we actually want to look behind the scenes to see whether there is actually an interstate component to the case? And we do that in a lot of contexts, and why would we just want to assume that in every case, it's easier for the government to establish? And your point that we didn't spend a lot of time on, I don't know how that cuts, but why wouldn't we actually want to put the government to its proof beyond just showing? Well, I think we do. I just think, as counsel indicated, there's a number of different ways that the government does that. As counsel indicated, sometimes it's just by introducing the particular computer, the laptop, having an expert. We didn't do that here, I don't think. I agree there's lots of ways you could do it, I think, on this point, since you didn't do those things here. The laptop point you didn't make, I don't think. There was no question posed to a witness about where the MacBook Pro was manufactured. The computer itself was admitted into evidence. But the government did focus on satisfying the interstate commerce element through the testimony of the investigator who conducted the downloads in this case, who explained technically the way that he was able to conduct the downloads and that he would not have been able to do that without the Internet. I think that the patterns of instruction in this court's prior rulings on this, I don't think it was born out of what's easiest, what's easiest for the government to be able to prove or to satisfy this element. I think it's just a clear recognition of the way the Internet works. And the fact, secondarily, that in many cases in federal court, that interstate nexus element is, many courts instruct juries, it only needs to be a de minimis connection. It doesn't even have to be a connection that the defendant has to know about. It just has to be, and in this case, these downloads were not, could not have been conducted by the investigator in this case from the defendant's computer without the use of the Internet. But that assumes that the Internet itself, the use of the Internet itself is a use of an instrumentality of interstate commerce. It does, consistent with what Mr. – So you're saying that if we were to go the other direction, we would be ruling against our precedent. Is that what you're saying? In the United States versus PINA and in – Except that there wasn't ever – I mean, I know what PINA said, but there isn't anything really in that case that questions it, that there's not much evidence supporting that. That would just be sort of a given there, not to mention, as I read it, I think a little bit of a misapprehension about what a case that that case relied on had actually said. Well, I'm not sure that there was as clear a factual record about where the two computers were as there was in this case. Undisputed in this case, the investigator who was running his undercover computer was in Kentucky, in Campbell County, Kentucky. The defendant's computer was at his home in Kenton County, Kentucky. But as the detective testified, the use of the Internet was required, but also that oftentimes the servers from which these various computers, the Internet relies on and bounces off of are often not only just out of state, but as he testified, out of the country. That was not – it was – there was no further testimony about that fact other than in order to conduct the downloads, he was on the Internet, the defendant was on the Internet, the child pornography was made available for sharing in the defendant's shareholder, and the investigator successfully downloaded child pornography on five discrete occasions. I have a question about one other issue. Your friend on the other side didn't get to address it, but I think, Clark, one of his theories was that Teroff – I don't know if I'm saying the name right. Teroff. Teroff was somehow involved – maybe it was the one who actually downloaded this but Teroff was somehow involved with Clark's computers, and Clark wanted to cross-examine the witness about his distribution of legal pornography. Why isn't that somewhat relevant and informative as to a theory that that individual was also involved in the distribution of illegal types of pornography? Well, I think, to clarify, I think the defendant's defense of trial was multifaceted and somewhat shifting. I think it was the idea that – Well, defendants do that sometimes. Absolutely they do. Mr. Teroff was one of a couple of different witnesses who the defendant said could have been responsible for doing these downloads, but you're right. But that actually wasn't the proper cross that the defense wanted to get into a trial. It wasn't that he – that Teroff actually distributed child pornography. He wanted to get into Mr. Teroff's personal and intimate life, and that perhaps he and his girlfriend had publicized that in some form or fashion. I'm frankly not even sure what the evidence was other than that, but I think what the district court did, after much back and forth – there is a chasm between what is legal to be – what's done legally between consenting adults and what was done here, the content that we're talking about here. One's illegal, one's not. In probing a witness's personal life in that manner, when it has nothing to do with his reputation or truthfulness or untruthfulness, the court – the district court correctly – The theory was that he was somehow involved with the illegal distribution. That image was somehow involved there. And you're right. There's a chasm, but there's also 17 v. 18, which is an image of an 18-year-old – legal, 17, illegal. My point is I thought they were arguing that he was involved in this general kind of behavior and could have done both legal and illegal, and it wasn't actually – I'm not saying it was convincing, but that seemed to be the point. I thought there was at least going to be some relevance or some reason why the judge might let that question come in. Well, I think the way that – there was lots of argument about this, and in fact the district court went back and forth a couple of times before settling on, rightfully so, the foundation and the rules set out in Rule 608, but I don't think it was ever clear what the age of Mr. Feroff and his girlfriend were. I didn't mean their age. You're saying there's – there's the beauty of legal conduct, but on the margins here, the age of the individual in the image makes a big difference. It does. Anyhow, your point is just that this was not the defendant's theory. The theory I just crafted was not what the defendant was arguing. I'm sorry. No, I didn't mean to interrupt. I don't believe that that was the Crawford cross-examination that was excluded properly so by the district court. The record reflects that defense counsel wanted to cross Mr. Feroff on details of his personal and intimate, frankly, sex life with his girlfriend, and there was no indication – I'm sorry. I thought of that. But that sex life involved distribution of images of them engaging in sexual behavior, right, which is different than, to be sure, what Mr. Clark is accused of, but not, like, completely – I mean, he's distributing pornography over the Internet, so is it child pornography or not, it's still sort of of the same ilk. I think that's the defendant's point. And I think the record is unclear about the distribution angle. I think that all that counsel proffered to the district court was that Mr. Feroff and his girlfriend had engaged in sexual conduct and publicized it in some way, and that's all the record reflects. So whether that's distribution I think is a different question. But where the rubber meets the road in this case  about personal and intimate details of his sex life that were not illegal, and he had every opportunity and did – and, in fact, the government did ask if Mr. Feroff had any involvement in the conduct that they heard in the Clark household, which he vehemently denied. I see my time is up. Unless the court has any additional questions, I'll conclude. Thank you. Mr. Napolitano. Thank you. Picking it up where counsel ended, Mr. Clark's trial counsel advised the district court that he intended to cross-examine Mr. Feroff about his participation in the production and distribution of pornographic videos involving adults via a peer-to-peer sharing program. That's at the trial transcript, the second volume, HID 599. So the question is to what was proffered to the D.C. So what we have here are some major elements of the program that my client was accused of. The use of a peer-to-peer network – and I'll get to Judge Batchelder's discussion in a minute because it becomes relevant there as well – obviously the use and production of pornographic material, albeit allegedly legal pornographic material, all of which is of himself and his partner. From what we can tell from the record, that appears to be what the testimony – That's slightly different than just sort of wide-scale. There's a number of pornographic images. Indeed. It's defined just him and his partner. It appears to be – and I apologize for speaking under your arm – although it was cross-examination, so it's a little unclear what would have transpired. I think it was an appropriate avenue to have been exposed. Well, but doesn't – didn't counsel have to proffer that? He did, and what he proffered is what we cited from the trial transcript. It concerned the production, distribution over a peer-to-peer network of videos ostensibly of Mr. Theroff and a girlfriend of girlfriends that they had produced and distributed. With regard to Judge Batchelder's question about available for sharing, it's a very good question. I don't know that it's necessarily answered in the law. It sort of strikes to this granularity that I'm urging for, particularly in a situation where we just don't have evidence to support that. But what I will say is what we do have evidence of is not that here. On the facts of this case, you have Detective Cush talking about his very specific single-source download platform, his very specific software, which he called Torrential Downpour, which is designed to sort of knock out that broad-based availability of which you speak, ostensibly for the purpose of proving it's this guy, Mr. Clark, who is doing the distribution. Because normally what happens is if you want Raiders of the Lost Ark, you go out and it comes from a variety of different sources, pieces from here, pieces from there, and you have a host of individuals who are distributing that file here for purposes of a criminal prosecution, it has to be that person. And so his software is designed to specifically knock out. So are you saying that if there had been testimony about what you just described, the many sources that would come together to produce one image or one set of images, if there had been testimony relative to that, that would have satisfied your concern? I think it certainly would have struck closer to what Your Honor was speaking about in terms of the availability potentially being the critical nexus to interstate commerce necessary to satisfy the jurisdictional hook. And while it is a sufficiency argument, that's how we get jurisdiction through these cases, is through that element. But there wasn't such testimony here. There was testimony about that being the way it often works. But not here, and specifically not here. And specifically not here by the design of Kentucky law enforcement. And for those reasons, we don't think this ought to have been a federal prosecution. Thank you, Your Honor. Thank you. Mr. Napolitano, I see that you were appointed according to the criminal justice act and not to the court. I want to thank you for your service to your client. And with that, the case is submitted. Thank you very much, Your Honor.